FILED
2018 Mar-28 PM 01:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| JESSIE LEE ROBERTS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) 4:15-cv-01852-LSC |
| GARY MALONE, et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OF OPINION**

Before the Court is Defendants' Motion for Partial Judgment on the Pleadings. (Doc. 35.) In their Motion, Defendants contend that Counts A and B of Plaintiff Jessie Lee Roberts ("Plaintiff")'s First Amended Complaint are due to be dismissed for failure to state a claim. On January 2, 2018, the Court ordered the parties to brief the Motion. (Doc. 37.) Plaintiff responded to Defendants' Motion, stating that there were genuine issues of material fact that preclude judgment on the pleadings. He also asked for leave to amend certain "clerical errors" identified in his First Amended Complaint. (*See* Doc. 38.) For the following reasons, Defendants' Motion for Partial Judgment on the Pleadings is due to be granted.

I. FACTS AND PROCEDURAL HISTORY[1]

On September 11, 2015, there was an inmate riot in the segregation unit D-2 at the St. Clair Correctional facility where Plaintiff was incarcerated. During the riot, certain inmates, not including the Plaintiff, set fires and filled the D-2 unit with smoke. The smoke became thick, and correctional officers approached Plaintiffs' cell and asked whether he would like to "cuff-up" so that Plaintiff could be taken outside of the unit and away from the riot. Plaintiff agreed and allowed himself to be handcuffed by the officers, who then searched Plaintiff and his cell for weapons and matches. Finding nothing, the officers escorted Plaintiff down the D-E hallway where Plaintiff was placed in leg restraints before being led into the D-E walk yard with other inmates.

In the D-E walk yard, Plaintiff was instructed to wait in a certain location. While waiting, Plaintiff observed Defendant Gerald A. McMillian ("Defendant McMillian") and Defendant Gregory W. Malone ("Defendant Malone") walk into the yard. Plaintiff alleges Defendant Malone approached Plaintiff and began to beat him with a flashlight. According to Plaintiff, Defendant Malone, while hitting

---

[1] The Court recounts the following facts as taken from Plaintiff's First Amended Complaint. The "facts alleged in the complaint [are] accepted as true and viewed in the light most favorable to the nonmoving party," *i.e.*, the Plaintiff. *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008).

Plaintiff, yelled for him to "get down on the ground now." (Doc. 14 ¶ 18.) Plaintiff was at this point still cuffed and shackled.

Plaintiff then alleges that as he fell to the ground, Defendant McMillian began to beat Plaintiff with his officer stick. According to Plaintiff, Warden Karen Carter ("Defendant Carter") stood and watched Defendants McMillian and Malone beat Plaintiff and other inmates for a time, then stated "alright that's enough get them to the infirmary." (*Id.* ¶ 20.) Another officer took Plaintiff to the infirmary, where as a result of the Defendants' alleged strikes Plaintiff received several medical staples in his head to close his wounds.

Plaintiff thereafter instituted this action on October 22, 2015. (Doc. 1.) Counsel for the Plaintiff appeared on December 29, 2015. (*See* Doc. 11.) Plaintiff then took no further action at that time and did not serve the Defendants nor amend the original, pro se complaint. Over a year later, the Court directed him to refile an amended complaint and to serve the Defendants. Plaintiff filed his First Amended Complaint on March 25, 2016, and filed certificates of service of the Defendants over five months later on August 31, 2016, showing Defendants had been served on August 24 or 27, 2016. (Docs. 14-18.)

No further motions practice followed until a telephone conference set by the Court on May 12, 2017. The Court reminded the parties that the case had been

pending for almost two years without action. Defendants answered on May 18, 2017, and following the parties 26(f) planning meeting the Court entered a scheduling order which provided a deadline for Plaintiff to add new parties on October 9, 2017, and a deadline for adding causes of action on October 23, 2017. (Doc. 26.)

Defendants filed the present Motion for Partial Judgment on the Pleadings on December 28, 2017. In the Motion, Defendants argue that Plaintiff's First Amended Complaint fails to state a claim under 42 U.S.C. § 1983 against the Defendants for a violation of Plaintiff's Fourth Amendment rights and that Defendants are entitled to qualified immunity on those claims.

## II. STANDARD OF REVIEW

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo, N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). "In determining whether a party is entitled to judgment on the pleadings, [the court] accept[s] as true all material facts alleged in the non-moving party's pleading, and . . . view[s] those facts in the light most favorable to the non-moving party." *Id.* Courts

adjudicate a motion for judgment on the pleadings by the same standard applied to a motion to dismiss for failure to state a claim. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

## III. Plaintiff's Motion to Amend

Plaintiff originally alleged that Defendants committed § 1983 violations under the Eighth Amendment by use of cruel and unusual punishments, or failed to stop such violations from occurring. (Doc. 1 at 3 "Claim—8th amendment constitutional violation of my right to be free from assault."). In his First Amended Complaint, Plaintiff changed these allegations to the following:

**CAUSES OF ACTION**

**[COUNT] A. UNREASONABLE/EXCESSIVE FORCE**

. . .

> 26. The unreasonable or excessive use of force by correctional officers constitutes an unreasonable seizure in violation of the Fourth Amendment and can be asserted in a §1983 claim. The attack on Mr. Roberts violated his civil liberties and deprived him of his constitutional right to be free from unreasonable searches and seizures as provided by the Fourth Amendment. Moreover, these deprivations occurred while Defendants McMillian and Malone were acting under the color of law. Consequently, Defendant's Malone and McMillian are liable under 42 U.S.C.A. §1983 for excessive or unreasonable use of force.

**[COUNT] B. FAILURE TO INTERVENE**

> 27. The Plaintiff, . . . , adopts and realleges each and every fact and allegation stated in paragraphs 1 and 26 of this complaint as if set out fully herein.
>
> 28. A Plaintiff states a claim for *§1983* liability against an officer when that person fails to intervene, prevent, or allows to continue, a constitutional violation when that he/she is in a position to stop it. As asserted above, Defendant [Carter] stood by and watched with apathy as [Plaintiff] was attacked by the other officers. Defendant [] Carter had a duty to intervene and stop this constitutional violation and she failed to do so. Consequently, Defendant [] Carter is liable under <u>42 U.S.C.A. § 1983</u> for failure to intervene.

(Doc. 14 at 25-28.) Thus, rather than asserting claims under the 8th Amendment for cruel and unusual punishment, Plaintiff's First Amended Complaint asserted claims based on violations of the 4th Amendments prohibitions of unreasonable searches and seizures. Plaintiff argues that this change was a mere "clerical error," and he should be allowed to amend his First Amended Complaint to re-allege Eighth Amendment violations, because "all of Plaintiff's argumentation tracks what would be a viable Eighth Amendment claim but for the alternation of that word." (Doc. 38 at 5.)

Despite Plaintiff's argument to the contrary, the changes made by his First Amended Complaint did not amount to mere clerical or scrivener's errors. In the body of paragraph 26, Plaintiff repeatedly makes reference to the right to be free from "search and seizure"—which is protected by the Fourth, and not Eighth,

Amendment. If Plaintiff had truly made an error in the typing of that allegation, then it would be logical that the claims would read, "[t]he attack on [Plaintiff] violated his civil liberties and deprived him of his constitutional right to be free from the infliction of *cruel and unusual punishment as provided by the Fourth Amendment*." (Doc. 14 ¶ 26.) That in his statement of jurisdiction Plaintiff stated he sought "redress for deprivation of rights guaranteed by the Fourth Amendment . . . pursuant to 42 U.S.C. § 1983" only reinforces the conclusion that Plaintiff consciously chose to rely on the Fourth Amendment. (*Id.* ¶ 7.) The Court is thus not convinced that the above-cited paragraphs were clerical errors; rather it appears that Plaintiff explicitly chose to assert Fourth Amendment claims.

District courts are required to enter a scheduling order that "limit[s] the time to join other parties [and] amend the pleadings . . . ." Fed. R. Civ. P. 16(b). Such orders "control the course of the action unless the court modifies it," Fed. R. Civ. P. 16(d), and may be modified only "upon a showing of good cause." Fed. R. Civ. P. 16(b)(4). This good cause standard precludes modification unless the schedule cannot "reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 Advisory Committee's Note to 1983 Amendment; *see also Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) ("If [a] party

was not diligent, the [good cause] inquiry should end." (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

Plaintiff has not shown good cause sufficient to allow him to amend his First Amended Complaint. Since appearance of counsel, Plaintiff has repeatedly failed to prosecute this action, as evidenced by month- and year-long delays between filings. Such delays are strong evidence of a lack of diligence. Having filed the First Amended Complaint himself, Plaintiff clearly had knowledge of the facts therein when he failed to seek amendment within the Court's deadline. The Eleventh Circuit has emphasized that a "lack of diligence that precludes a finding of good cause [includes] a plaintiff who has full knowledge of the information with which it seeks to amend its complaint before the deadline passes." *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009).

Plaintiff cites *Hurtado v. Raly Development, Inc.*, 281 F.R.D. 696 (S.D. Fla. 2012) as supporting leave to amend in this instance. *Hurtado*'s facts differ materially from the present action—there the court held that amendment of the defendants' answer was "impossible" according to the scheduling order because the plaintiff's second amended complaint was filed on the deadline to amend pleadings. *Id.* at 699. Thus, "it was impossible for the [c]ourt's schedule to be met 'despite the diligence' of [d]efendants." *Id.* Only after determining the defendants

had shown good cause, did court then proceed to determine whether to grant leave to amend under Rule 15. *Id. Hurtado* does not help Plaintiff's case, because Plaintiff has not shown diligence in prosecuting this action. Plaintiff has not shown that his amendment was a mere scrivener's error nor that there is good cause for the Court to allow amendment at this late stage in the proceedings. Plaintiff's request to amend as stated in his Response is DENIED. The Court next considers Defendant' Motion for Judgment on the Pleadings as directed toward Plaintiffs' First Amended Complaint.

## IV. DISCUSSION

### a. QUALIFIED IMMUNITY

"Under qualified immunity analysis, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003); *see Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). If the official is unable to prove that he was acting within his discretionary authority, he is not entitled to qualified immunity. *Lumley v. City of Dade City*, 327 F.3d 1186, 1194 (11th Cir. 2003) ("If the defendants were not acting within their discretionary authority, they are ineligible for the benefit of qualified immunity."). "Once a defendant establishes that he was acting within his

discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). "To overcome qualified immunity, the plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman*, 370 F.3d at 1264 (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).

To determine whether Defendants acted within their discretionary authority, the Court must ask whether their actions "(1) were undertaken 'pursuant to the performance of [her] duties,' and (2) were 'within the scope of [her] authority.'" *Dang ex rel. Dang v. Sheriff, Seminole Cty.*, 871 F.3d 1272, 1279 (11th Cir. 2017) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)). "In applying each prong of this test, [the court] look[s] to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman*, 370 F.3d at 1266. In other words, "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Mikko v. City of*

*Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017) (citing *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (emphasis added)).

Defendants were acting within their discretionary duties at the time during which Plaintiff states his constitutional violations occurred. Defendants were correctional officers or supervisors working at St. Clair Correctional Facility. As part of their job duties, correctional officers were required to remove Plaintiff, an inmate, from his cell and place him into the yard. Defendants then allegedly struck Plaintiff or allowed Plaintiff to be struck. If done for the proper purpose, Defendants' alleged striking of Plaintiff would be reasonably related to their discretionary duties that require them to physically control prisoners. Thus, Defendants have made their initial showing that they were acting within their discretionary duties.

Plaintiff must next show that Defendants violated his Fourth Amendment rights when they allegedly struck him with their officer batons and flashlights. Because the notion that "all excessive force claims brought under § 1983 are governed by a single generic standard" has been rejected, *Graham v. Connor*, 490 U.S. 386, 393 (1989), Plaintiff must specify the constitutional source of his claim and "validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized

'excessive force' standard." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 7-22 (1985)). As the Court held above, Plaintiff's First Amended Complaint only asserts a Fourth Amendment claim—which is decisive as prisoners cannot make claims of excessive force under the Fourth Amendment. *Id.* at 395 ("[*A*]*ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment . . . ." (emphasis in original)); *Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("[T]he Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners . . . , where the deliberate use of force is challenged as excessive and unjustified."). While neither the Supreme Court nor the Eleventh Circuit has squarely addressed whether prisoners can be "seized" under the Fourth Amendment, multiple courts have suggested that no seizure can occur post-confinement. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause [while] . . . the Eighth Amendment's Cruel and Unusual Punishment Clause . . . applies to such claims by convicted prisoners."); *see also Garrett v. Athens-Clarke Cty.*, 378 F.3d 1274, 1279 n.11 (11th Cir. 2004) (referencing

the time "when an arrest ends and pretrial detainment begins" in discussing when Fourth Amendment applies to excessive force claim). A clear delineation of the border between the Fourth and Eighth Amendment is not necessary for this action, as it suffices to say that the proper claim for Plaintiff in this case was under the Eighth Amendment.

There is a total absence of any clearly established law that would give Defendants a fair warning that their acts constituted a seizure of Plaintiff or was otherwise violative of the Fourth Amendment. The "salient question" is "whether the state of the law [at the time of the alleged violation] gave [Defendants] fair warning" that their alleged treatment was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003) (quoting *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996)). As Plaintiff has not identified any clearly established law showing that an already lawfully incarcerated prisoner is seized for Fourth Amendment purposes under the facts of this case, Plaintiff's Fourth Amendment excessive force claims are due to be dismissed.

Plaintiff additionally asserted in "Count B" of his First Amended Complaint that Defendant Carter is liable under § 1983 for a "failure to intervene" because she "stood by and watched with apathy as [Plaintiff] was attacked by the other officers. Defendant [] Carter had a duty to intervene and stop this constitutional violation and she failed to do so." (Doc. 14 at 28.) Defendants have moved for judgment on the pleadings on this claim as well, stating that the "constitutional violation" referred to in Plaintiff's Count B references Plaintiff's claim in Count A. Failure to intervene can be asserted for an official's failure to stop another official's unconstitutional conduct. *See Reid v. Neal*, 688 F. App'x 613, 617 (11th Cir. 2017) (Eighth Amendment); *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) (Fourth Amendment). As shown above, Count A lacks merit because it seeks to assert Fourth Amendment rights on behalf of a prisoner, where the proper source of such rights is under the Eighth Amendment.

In the Response to Defendants' Motion for Judgment on the Pleadings on this claim, Plaintiff puzzlingly appears to assert that this claim was actually a Fourteenth Amendment claim for deliberate indifference to a medical need, stating that:

> In Count B of the Amended Complaint, Plaintiff argues that Defendant *Carter demonstrated deliberate indifference to the assault being inflicted* upon him.

> . . .
>
> Taking Plaintiff's version of the facts as true, (1) Defendant Carter witnessed a shackled Plaintiff face-down on the concrete with blood pouring from multiple head wounds, (2) Carter stood by as more blows rained down upon an already subdued Plaintiff, (3) *Defendant Carter did not offer any medical reason as to the delay in halting the assault and directing that medical attention be given to Plaintiff.* Defendant's version of the facts varies widely from this account, but that variation only strengthens the conclusion that there is a dispute of material fact as to whether Defendant Carter demonstrated *deliberate indifference towards Plaintiff.*

(Doc. 38 at 10-11 (emphasis added).) In addition to the above-quoted section, Plaintiff cites *Dukes v. Georgia*, 428 F. Supp. 2d 1298, 1325 (N.D. Ga. 2006) in support of his argument—however, *Dukes* only addresses deliberate indifference to medical needs claims under the Fourteenth Amendment, and not failure to intervene. *Id.* Deliberate indifference to medical need and failure to intervene involve two separate inquiries and causes of action. *Compare Gilmore v. Hodges*, 738 F.3d 266, 273-74 (11th Cir. 2013) ("To prevail on a claim of deliberate indifference to serious medical need in violation of the Fourteenth Amendment, a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." (quotation marks and citation omitted)) *with Ensley*, 142 F.3d at 1407 (An officer is liable under § 1983 for failure to intervene if the officer "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place

in his presence."). Plaintiff may not raise a deliberate indifference claim for the first time in his Response, and may not add this claim after the Scheduling Order's deadline for doing so has passed. *See* Fed. R. Civ. P. 16. Plaintiff otherwise makes no argument in favor of his failure to intervene claim alleged in his First Amended Complaint, and this claim is therefore abandoned. *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("[F]ailure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned.").

The Court notes *in arguendo* that if this claims was not abandoned—which it has been—that the First Amended Complaint directly based the failure to intervene claim on Defendant Carter's failure to stop the violation in Count A, that is, the alleged violation of the Fourth Amendment. (*See* Doc. 14 ¶ 28 ("As asserted above [in Count A], Defendant stood by and watched with apathy as Roberts was attack by other officers. Defendant [Carter] had a duty to intervene and stop this constitutional violation.").) As shown above, Plaintiff's Fourth Amendment rights were not violated because he is a prisoner, and thus not subject to "seizure." Even if Plaintiff had not abandoned his failure to intervene claim, which he has, the claim would still be subject to dismissal because Plaintiff did not identify any

constitutional right that Defendant Carter failed to protect—which is itself necessary to a failure to intervene claim.

### b. STATE-LAW BATTERY CLAIM

Defendants have not moved for judgment on the pleadings on Plaintiff's remaining state-law battery claim. However, as the two federal claims that were the basis of subject matter jurisdiction for this action have been dismissed, the Court must determine whether in its discretion it should continue to exercise subject matter jurisdiction in this action. Plaintiff's First Amended Complaint identifies the source of this Court's subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. Neither statute provides for subject-matter jurisdiction for a state-law battery claim. Nor is there subject matter jurisdiction under 28 U.S.C. § 1332(a), as it appears that all parties are Alabama residents and thus non-diverse. (*See* Doc. 14 ¶¶1-4 (stating all parties either worked or resided at the St. Clair Correctional Facility in Springville, Alabama).) Finally, while the Court has the discretion to continue to exercise supplemental jurisdiction over this state-law claim, it declines to do so. 28 U.S.C. § 1367(c)(3); *see Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

Thus, Plaintiff's single remaining state-law battery claim is dismissed without prejudice, to enable Plaintiff to refile in state court, if appropriate.

V. Conclusion

As stated more fully above, Defendants' Motion for Partial Judgment on the Pleadings is due to be granted and Plaintiff's remaining state law claim is due to be dismissed without prejudice. An Order consistent with this Opinion will be entered separately.

Done and Ordered on March 28, 2018.

_____
L. Scott Coogler
United States District Judge

190485